525 A.2d 808

**COMMONWEALTH of Pennsylvania**

v.

**Frank TRPUTEC, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1986.

Filed May 11, 1987.

Reargument Denied Aug. 7, 1987.

240

&#10087;&#10159;6

---

Michael J. Healey, Pittsburgh, for appellant.

Andrea F. McKenna, Harrisburg, for Com., appellee.

Before BROSKY, DEL SOLE and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from a judgment of sentence entered against appellant after being convicted in a jury trial on one count each of criminal solicitation to commit murder and criminal conspiracy to commit murder. The appellant has raised eleven issues, included among them is the issue of whether the Office of the State Attorney General lacked authority to prosecute this case. Because we find that the

Attorney General lacked the requisite authority to prosecute the case we vacate the judgment of sentence.[1]

Appellant was implicated in criminal activity by one Ron Arnold who was arrested in 1984 by Pennsylvania State Police and charged with 18 counts pertaining to four stolen tractor-trailers. As a result of that arrest, Arnold entered into a plea agreement in which he pled guilty to four counts of receiving stolen property. In addition to the crimes charged, Arnold admitted to the police his involvement in other crimes including the theft of some 40 tractor-trailer units, alteration of vehicle titles and arson. As to his part of the plea agreement, Arnold agreed to cooperate with the Attorney General in the prosecution of criminal activities of which he had knowledge. Arnold cooperated in these investigations in the hope that his sentence would be shortened and had been told that any cooperation he rendered would be brought to the attention of the sentencing judge, although he had received no promises that the Attorney General would make specific sentence recommendations.

One of the crimes in which Arnold admitted an involvement was an arson at F & H Equipment, a truck repair shop, located in Beaver County and owned by Frank Trputec. At the request of Francis H. Grolemund, a criminal investigator with the Pennsylvania State Police, Arnold arranged a meeting with Trputec. The purpose of this meeting was to discuss the fire at F & H Equipment. To elicit information about the arson which had occurred in 1981 Arnold introduced the name of Bill Hilton into the conversation. Hilton had worked with Trputec to set the fire. The basis of Arnold's fabrication was that he was growing fearful that Hilton would talk about the fire as the police were reopening their investigation of the arson.

The initial meeting between Arnold and Trputec took place July 24, 1985. Arnold voluntarily consented to the recording of the meeting. The conversation between the two men was recorded by means of a recording device

---

1. As we find this issue dispositive of the instant appeal, we express no opinion as to the merits of appellant's remaining issues.

concealed on Arnold and monitored from a remote location by Trooper Grolemund.

After initial small talk, Arnold told Trputec that he feared Hilton was talking or would soon talk to the police about the arson at F & H Equipment. Arnold asked Trputec what Trputec would say if the police came to him and said that Hilton had admitted starting the fire. Shortly after this question by Arnold, Trputec raised the prospect of having Hilton "erased." Later taped conversations fleshed out the details of the contemplated agreement whereby, for $10,000, Trputec would have Hilton killed. The taped conversations and testimony of Arnold and Trooper Grolemund comprised the bulk of the Commonwealth's case.

An information was prepared and signed by the District Attorney of Lawrence County, William Panella. Some time later Mr. Panella was contacted by the Attorney General's office and informed of other charges pending against the appellant in neighboring counties which were being handled by the Attorney General's office. Mr. Panella was asked if he had any objection to the Attorney General's office handling the prosecution in Lawrence County. Mr. Panella indicated he did not object and was further asked if he would write a letter to the Attorney General's office requesting that they handle the prosecution. This was done and the office of the Attorney General prosecuted the defendant for the conviction appealed from.

As noted in this court's *en banc* decision in *Commonwealth v. Carsia*, 341 Pa.Super. 232, 491 A.2d 237 (1985), the scope of the Attorney General's authority and power has been subjected to a storied history of treatment by both the legislature and the judiciary of this Commonwealth. However, that decision, as affirmed by our Supreme Court, firmly established that the Commonwealth's Attorney's Act, 71 P.S. § 732–205, is the current source of the Attorney General's authority and that the Attorney General possesses no greater power to prosecute criminal matters than that prescribed by section 205 of the act. *Commonwealth v.*

*Carsia,* 512 Pa. 509, 517 A.2d 956 (1986).[2]   In so doing, this court and our Supreme Court have reversed an earlier trend in decisional case law which had extended great power to the Attorney General to prosecute such cases.   A most positive statement to this effect was made by our Supreme Court in *Commonwealth v. Schab,* 477 Pa. 55, 61, 383 A.2d 819, 822 (1978):

> We no longer adhere to this view.   Simply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the same right to supersede an elected District Attorney, an officer unknown to the common law.   It would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, the Attorney General.   To countenance such a separation of accountability and control undermines self-government and promotes centralization of law enforcement—precisely the approach rejected in Pennsylvania by statute in 1850 and constitutionally in 1974.   (citations omitted).

The Commonwealth and the trial court have cited section 205(a)(3) of the Act for the authority of the Attorney General to prosecute this case.   71 P.S. § 732–205(a)(3) states:

> (a) The Attorney General shall have the power to prosecute in any county criminal court the following cases:

> .     .     .     .     .

> (3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

A request was made, in the form of a written letter, by the District Attorney to the Attorney General's office.

---

**2.**   See, in accord, this court's *en banc* decision in *Commonwealth v. Goodman,* 347 Pa.Super. 403, 500 A.2d 1117 (1985).

However, the request would not seem to cite a reason encompassed in the Act allowing the Attorney General to assume prosecution;[3] and, although we do not find the wording of the District Attorney's letter dispositive of the issue before us, certainly the content of that letter cannot be ignored and raises immediate concern over the existence or presence of circumstances sufficient to allow the Attorney General to prosecute this case.

The District Attorney's letter states that because charges were pending against appellant in other counties, which the Attorney General's office was handling, the charges in Lawrence County could be handled "in the most practical manner" by the Attorney General's office. The statutory provisions cited allow the Attorney General to prosecute upon request of the District Attorney if there is a potential for a conflict of interest, or if the District Attorney lacks the resources to conduct an adequate investigation or prosecution of the case. At no time in the hearings, arguments or briefs has it been argued or alleged that there exists a potential for a conflict of interest. Rather, the Attorney General argues now that the District Attorney's request is tantamount to an indication that he lacked the resources to adequately investigate and prosecute the case. Upon reviewing the record we cannot agree with this proposition.

William Panella testified in pre-trial hearings on how and why this case came to be prosecuted by the Attorney General's office. He indicated that he had no investigative

3. The full text of the written request is as follows:
Dear Mr. Claus: Charges of criminal solicitation and criminal conspiracy have been filed against Frank Trputec for conduct by him in Lawrence County. We have become aware, however, that this defendant is also accused of conduct in other counties. Because of the multi-county scope of this prosecution and the fact that your office has been asked to handle the related prosecutions in Mercer County and Crawford County, we believe that the prosecution of the charges in Lawrence County could be handled in the most practical manner by your office. Therefore, by this letter, we are requesting that your office handle the prosecution of Mr. Trputec on the charges in Lawrence County. Do not hesitate to contact our office if we may be of any assistance to you in this prosecution. Very truly yours, William M. Panella, District Attorney.

staff and that his office routinely worked with law enforcement agencies in prosecuting their cases. Mr. Panella's testimony indicated that, generally speaking, all criminal investigation in Lawrence County was performed by an appropriate police agency. After charges were filed by the police, attorneys from the District Attorney's office met with arresting and investigating officers and other witnesses to exchange information for the preparing of criminal complaints and for eventual prosecution. In the present case, the Commonwealth's case had been built *prior* to the Attorney General's office assuming the prosecution. Furthermore, Trooper Grolemund testified that although he contacted the Attorney General's office to receive approval for intercepting conversations of Mr. Arnold with appellant, and although he received some advice from their office, the investigation of this matter was a "complete state police case."

Additional testimony revealed that the Lawrence County District Attorney's Office was comprised of Mr. Panella and nine Assistant District Attorneys, five being full time and four part time. None of the testimony indicated that Mr. Panella's office would have had difficulty in trying the case. To the contrary, Mr. Panella testified that usually all of the criminal work is completed within the first week of the two week criminal jury term commonly scheduled in Lawrence County. In fact, all indications are that if Mr. Panella had not been contacted by the Attorney General's office, the District Attorney's office would have proceeded to prosecute appellant without objection. It further appears that Mr. Panella simply assented to the Attorney General's request to prosecute the case. Unfortunately, we cannot find that such factors bestow authority in the Attorney General to prosecute the case under 71 P.S. § 732–205(a)(3).[4] A request by the District Attorney's office with-

4. In this regard, we find the following quote from our opinion in *Commonwealth v. Goodman*, 347 Pa.Super. 403, 500 A.2d 1117 (1985), is equally appropriate here by simply substituting the word "prosecution" for investigation:

out one of the enumerated circumstances being present will not suffice.

■ In reaching this decision we are mindful not to require a District Attorney to mirror the statutory language, or, as appellee has characterized it, to use "magic words", in its request to the Attorney General to handle a prosecution. However, we are equally mindful not to extend plenary power to that office to step into and assume a prosecution of criminal matters, especially when this court sitting *en banc* and our Supreme Court have recently indicated the impropriety of authorizing such power. In the present case we would be straining our imaginations to hold that the circumstances presented to the court are sufficient under 71 P.S. § 732–205(a)(3) to grant power to the Attorney General to prosecute the case. As the Attorney General was without authority to prosecute appellant below, the judgment of sentence must be vacated.[5]

> "More importantly, the record also reveals that at no time was there any representation by either law enforcement office that the district attorney 'lack[ed] the resources to conduct an adequate investigation,' or that there was a 'potential for an actual or apparent conflict of interest on the part of the district attorney or his office.' *Id.* We, therefore, reject the Commonwealth's argument that there was any substitution under section 205, by agreement or request, which permitted the Attorney General to investigate."

5. The present case differs somewhat from both *Carsia* and *Goodman,* discussed *supra,* in that both of those cases found the trial court granting the requested relief prior to the trial taking place. In *Carsia,* the appellee had filed a petition to quash the information filed by the Attorney General, which was granted. In *Goodman,* the appellee had filed a motion to suppress evidence produced as a result of the Attorney General's investigation which was also granted. The Attorney General had filed the complaint against Goodman then subsequently decided that the office lacked a basis for prosecuting the case and "turned the case over" to the Allegheny County District Attorney's Office which assumed the prosecution. Goodman then filed the motion to supress. In the present case, the information was filed by the District Attorney of Lawrence County but then the prosecution was "turned over" to the Attorney General. Unlike the situation in *Carsia* and *Goodman,* Trputec's pre-trial request for relief was denied by the trial court.

As the information in this case was filed by the proper agency, we see no reason to quash it. However, as we find that the Attorney

Judgment of sentence vacated, case remanded for a new trial by the District Attorney of Lawrence County.

General lacked the authority to prosecute the case, we see no alternative but to vacate the judgment of sentence.